**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Civil Action No.: 25-173 (RC) |
| v. | : | Re Document No.: 23 |
| APPROXIMATELY 942,462.845 USDT, | : | |
| Defendant in rem. | : | |

## MEMORANDUM OPINION

### GRANTING PLAINTIFF'S MOTION FOR DEFAULT FORFEITURE JUDGMENT

## I. INTRODUCTION

This *in rem* forfeiture action arises out of an investigation by the Federal Bureau of Investigation ("FBI"). Plaintiff United States of America ("the Government") seeks the forfeiture of approximately 942,462.845 USD Tether ("USDT") ("Defendant Property"). The Government states that the funds were connected to several federal offenses. Specifically, the Government alleges that the Defendant Property constitutes proceeds of identity theft, computer fraud and abuse, wire fraud, and conspiracy offenses related to the foregoing crimes. The Government further contends that those proceeds were subsequently laundered. No claimant timely responded to the Government's complaint, and the Clerk of Court entered default on June 24, 2026. The Government now moves for default judgment and an order of forfeiture against Defendant Property. For the reasons set forth below, the Court grants the Government's motion.

## II. BACKGROUND

### A. Factual Background

The Government alleges that known and suspected Democratic People's Republic of Korea ("North Korea") information technology ("IT") workers used false identities to gain

employment in virtual currency companies and exploited these companies' smart contracts to steal approximately $950,000 worth of virtual currency from users of an application offered by U.S. Company 1. Compl. ¶¶ 33, 40, ECF No. 1. In carrying out this scheme, the Government alleges that the North Korean IT workers committed identity theft, computer fraud and abuse, wire fraud, and conspiracy offenses related to the foregoing crimes (in violation of 18 U.S.C. §§ 371, 1028, 1030, 1343, and 1349) as well as money laundering and money laundering conspiracy offenses (in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 1956(h)). *Id.* ¶¶ 8, 48, 51.

**1. FBI Investigation**

The Government issued a Public Service Announcement in May 2022 outlining this type of scheme. *Id.* ¶ 34. The North Korean regime allegedly deploys "highly skilled IT workers" to remote work positions in foreign countries to generate revenue for the regime's "weapons of mass destruction, ballistic missile, and cyber programs." *Id.* Those IT workers use stolen identities to pose as non-North Korean nationals, gain remote jobs with companies such as virtual currency platforms, and move payments back to the North Korean regime. *Id.* IT workers exploit their privileged access to the victim company for illegal purposes, including stealing cryptocurrency. *Id.* This North Korean IT workers scheme includes the theft of about $950,000 worth of virtual currency from an application offered by now-defunct U.S. Company 1. *Id.* ¶ 33. The FBI attributed the theft to North Korean IT workers because the distinctive tactics, techniques, and procedures used in this theft have been used in other similar thefts associated with North Korean IT workers. *Id.* ¶ 35. For example, IP addresses linked to the Russian telecommunications company TransTeleCom ("TTK"), which is assigned autonomous system (AS) 20485 and has provided internet access to the North Korean government since 2017, have

been observed in other IT worker investigations engaging in illegal activities like spear phishing. Here, "a TTK IP addresses assigned AS 20485 initiated the transfer of stolen funds from users of the U.S. Company 1 to threat-actor-controlled wallets." *Id.*

**2. U.S. Company 1 Heist**

U.S. Company 1 was a decentralized financial system that utilized a trading bot to trade Solana, a virtual currency. *Id.* ¶¶ 31, 36. A trading bot is software that automatically trades virtual currency following a pre-defined algorithm. *Id.* ¶ 36. For automatic trading on their behalf, the users had to grant the trading bot direct access to their virtual currency wallets, allowing the bot to withdraw virtual currency. *Id.*

The Government alleges that on or about March 29, 2024, North Korean IT workers stole approximately 6,045 Solana ("SOL") from U.S. Company 1 users, laundering the currency through several unhosted wallets and transferring it across multiple centralized exchanges to hide the source of the transactions, before transmitting it to Defendant Property[1] addresses. *Id.* ¶ 37. A trusted source reported that on or about March 29, 2024, North Korean IT workers exploited compromised U.S. Company 1 users' private keys to access and deplete their Solana wallets. *Id.* ¶ 39. The attackers used the private keys of a previously compromised trading bot to access the U.S. Company 1's users' virtual wallets. *Id.* ¶¶ 19, 40. Approximately 6,045 SOL were stolen from over 400 users of U.S. Company 1, representing a total loss of approximately $1 million. *Id.* ¶ 40. On the same day, the stolen SOL from victims' wallets was transferred to 32 threat-actor-controlled wallets. *Id.* ¶¶ 21, 37, 41. The transfers were initiated from a TTK IP address and executed over a short period of time. *Id.* ¶ 41. The FBI concluded North Korean actors were

[1] Defendant Property represents funds traced to that March 2024 theft from U.S. Company 1's users. *Id.* ¶ 38.

likely responsible based on the source's information and "the known use of TTK-supplied IP addresses by the North Korean government." *Id.*

On March 31, 2024, all funds within the 32 threat-actor-controlled wallets were transferred to multiple instant exchanges, including FixedFloat and EasyBit. *Id.* ¶ 42. The funds from 22 of the 32 threat-actor-controlled wallets were consolidated at FixedFloat deposit address 5ndLnEYqSFiA5yUFHo6LVZ1eWc6Rhh11K5CfJNkoHEPs ("5ndLnEY"). *Id.* ¶ 42. After swapping the SOL for USDT, a stablecoin pegged to the U.S. dollar, and Ethereum ("ETH"), a native, volatile coin, the threat actors transferred the funds to the addresses of Defendant Property. *Id.* ¶¶ 16, 42. Tether, the company that manages smart contracts and the treasury for USDT, froze the USDT funds at the request of law enforcement. *Id.* ¶¶ 16, 43–44.

On or about May 31, 2024, the FBI confiscated the Defendant Property and transferred the funds to an FBI-controlled virtual currency wallet. *Id.* ¶ 45. The balance of the wallet was 942,462.845 USDT as of December 2024. *Id.*

**B. Procedural Background**

On January 21, 2025, the Government commenced this civil forfeiture action *in rem* against Defendant Property by filing a Verified Complaint. *See* Compl. The Verified Complaint alleges that Defendant Property constitutes proceeds of identity theft, computer fraud and abuse, wire fraud, money laundering, and conspiracy to commit the foregoing crimes in violation of 18 U.S.C. §§ 371, 1028, 1030, 1343, 1349, and 1956. *Id.* ¶¶ 3–10, 48, 51. The Government thus alleges that Defendant Property is subject to forfeiture under 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461(c). *Id.* ¶¶ 11–12. On January 8, 2026, the Government posted a Notice of Civil Forfeiture on its official website, www.forfeiture.gov, for thirty consecutive days through February 6, 2026. *See* Decl. of Publ'n 1, ECF No. 8-1; Mot.

Default Forfeiture J. 2–3, ECF No. 23. Any verified claim in response to the notice had to be filed within 60 days of the notice being posted on the Government forfeiture website, or by March 9, 2026. *See* Fed. R. Civ. P. Supp. G(5)(a)(ii)(B). No timely claim was filed in this case. *See* Req. Entry Default ¶¶ 2, 4, ECF No. 21. Untimely claims were filed by Han Kim and Yong Seok Kim on March 23, ECF Nos. 9–10, and again with an answer to the complaint on April 7, ECF Nos. 11–13. *See* Mot. Default Forfeiture J. 2. However, after the Government moved to strike their claims on May 28, ECF No. 18, the claims were voluntarily dismissed on June 4, ECF No. 19. Due to a lack of timely response to the notice, the Clerk of Court entered default judgment against all persons or entities that would otherwise claim an interest in Defendant Property on June 24, 2026. Clerk's Entry of Default, ECF No. 22. The Government now moves for default judgment and a final order of forfeiture against Defendant Property. *See* Compl.

## III. LEGAL STANDARD

### A. Motion for Default Judgment

Default is appropriate in forfeiture actions when the "party against whom a judgment is sought . . . has failed to plead or otherwise defend" the action. Fed. R. Civ. P. 55(a); *see also United States v. All Assets Held in Acct. No. XXXXXXXX*, 330 F. Supp. 3d 150, 155–56 (D.D.C. 2018). Two steps must be followed by a party seeking default judgment. Fed. R. Civ. P. 55; *see also Bricklayers & Trowel Trades Int'l Pension Fund v. KAFKA Constr., Inc.*, 273 F. Supp. 3d 177, 179 (D.D.C. 2017). First, the party must request that the Clerk of Court enter default against the party who "has failed to plead or otherwise defend" the action. Fed. R. Civ. P. 55(a); *Bricklayers*, 273 F. Supp. 3d at 179. The entry of default "establishes the defendant's liability for the well-pleaded allegations of the complaint." *United States v. Twenty-Four Cryptocurrency Accts.*, 473 F. Supp. 3d 1, 4 (D.D.C. 2020) (citing *Boland v. Providence Constr. Corp.*, 304

F.R.D. 31, 35 (D.D.C. 2014). Second, the moving party must request entry of default judgment against the defending party. Fed. R. Civ. P. 55(b). A defendant's failure to respond does not automatically entitle a plaintiff to default judgment. *See United States v. $6,999,925.00 of Funds Associated with Velmur Mgmt. Pte Ltd.*, 368 F. Supp. 3d 10, 17 (D.D.C. 2019). “At that point, the plaintiff ‘must prove his entitlement to the relief requested using detailed affidavits or documentary evidence on which the court may rely.’” *Twenty-Four Cryptocurrency Accts.*, 473 F. Supp. 3d at 4 (quoting *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 103 (D.D.C. 2015)). For the plaintiff to be entitled to default judgment, the complaint must state a claim for relief. *Velmur*, 368 F. Supp. 3d at 17. And “[a] defaulting defendant is deemed to admit every well-pleaded allegation in the complaint.” *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002); *United States v. Oil Tanker Bearing Int'l Mar. Org. No. 9116512*, 480 F. Supp. 3d 39, 43 (D.D.C. 2020).

**B. Civil Forfeiture**

Pleading requirements in civil forfeiture actions are governed by the Supplemental Rules and by the Federal Rules of Civil Procedure, to the extent they are “[not] inconsistent with the Supplemental Rules.” Fed. R. Civ. P. Supp. R. A(2). Supplemental Rule G establishes the relevant requirements for a complaint in such an action. The complaint must be verified, state the grounds for jurisdiction, describe the property “with reasonable particularity,” identify the statute under which the action is brought, and “state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.” Fed. R. Civ. P. Supp. R. G(2). “Before a default judgment is entered pursuant to a complaint for forfeiture in rem, the government must also show that it complied with the notice requirements contained in the

Supplemental Rules." *United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, 324 F. Supp. 3d 38, 46 (D.D.C. 2018).

## IV. ANALYSIS

The Government asks the Court to enter default judgment and order the forfeiture of Defendant Property. Because the Government has properly provided notice to all known potential claimants through internet publication, no verified claim has been timely filed in response to that notice, and the Verified Complaint sufficiently alleges that Defendant Property is subject to forfeiture, the Court grants the Government's motion for default judgment.

### A. Notice

Under Supplemental Rule G, publication and direct notice to potential claimants is required before a judgment of forfeiture may be entered. Fed. R. Civ. P. Supp. G(4)(a), (b). Notice by publication must be published within a reasonable time after filing the complaint or a time ordered by the Court. *Id.* G(4)(a)(i). The Government must pursue reasonable options for publication to notify potential claimants. *Id.* at G(4)(a)(iv). One such option is publication on an official government forfeiture website for at least thirty consecutive days. *Id.* at G(4)(a)(iv)(C). The publication notice must "describe the property with reasonable particularity," "state the times under Rule G(5) to file a claim and to answer," and "name the government attorney to be served with the claim and answer." *Id.* at G(4)(a)(ii)(A)–(C).

Here, the Government complied with Supplemental Rule G's notice requirement. The Government published a notice regarding Defendant Property on its official forfeiture website, www.forfeiture.gov, for thirty consecutive days, between January 8, 2026 and February 6, 2026. *See* Decl. of Publ'n 1–3. The online notice of forfeiture described the amount of cryptocurrency associated with the virtual currency address, the type of currency, the address at which the

currency was seized, when the seizure occurred, and the timing under Supplemental Rule G(5) to file a claim and answer. *Id.* at 2. It also provided the name and address of the government attorney whom potential parties should serve. *Id.* Despite publication, no parties filed a claim within 60 days of the notice being posted on the Government's forfeiture website. Req. Entry Default ¶¶ 2, 4; Clerk's Entry of Default. Accordingly, the Government has satisfied the public notice obligation. *See* Fed. R. Civ. P. Supp. R. G(4)(a)(iv)(C).

**B. Adequacy of the Complaint**

In addition to the notice requirements, Supplemental Rule G also sets the specifications of a complaint, which, as relevant here, must (1) "be verified;" (2) state the grounds for jurisdiction and venue; (3) "describe the property with reasonable particularity;" (4) "identify the statute under which the forfeiture action is brought;" and (5) "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2). Courts consider these requirements to constitute a "higher standard of pleading" than that imposed by Federal Rule of Civil Procedure 8. *See United States v. All Assets Held at Bank Julius Baer & Co.*, 571 F. Supp. 2d 1, 16 (D.D.C. 2008). However, Rule 8 "may help to clarify when a civil forfeiture complaint" states a claim. *United States v. $22,173.00 in U.S. Currency*, 716 F. Supp. 2d 245, 249 (S.D.N.Y. 2010).

The Government has successfully met the first four requirements, which are "largely formal." *Velmur*, 368 F. Supp. 3d at 19. The Government's complaint is verified, identifies the basis for jurisdiction and venue, describes the seized cryptocurrency by value as well as the addresses it was seized from, and identifies the statutes under which the forfeiture action is brought (i.e., 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), 982(a)(1) & 28 U.S.C. § 2461(c)). *See* Compl. 1, ¶¶ 1–13, 43–46, 49, 52.

To satisfy the somewhat more substantive fifth pleading requirement, which is "not particularly onerous," *Mingzheng*, 324 F. Supp. 3d at 51, the Government's complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *United States v. All Assets Held in Account Number XXXXXXXX*, 83 F. Supp. 3d 360, 366 (D.D.C. 2015) (quoting Fed. R. Civ. P. Supp. R. G(2)(f)). Here, the Government alleges that Defendant Property is forfeitable because the funds were involved in illegal schemes, including identity theft, computer fraud and abuse, wire fraud, money laundering, and conspiracy to commit the foregoing offenses. The Verified Complaint presenting information from the FBI's investigation supports a "reasonable belief" that Defendant Property was so involved.

The Government's allegations place Defendant Property at the center of an identity theft, computer fraud and abuse, wire fraud, and money laundering scheme. According to the Complaint, North Korean IT workers use the stolen identities of non-North Korean nationals to secure remote work positions at virtual currency platforms in foreign countries, then exploit their privileged access to those companies' user information for illegal purposes, including stealing virtual currency. Compl. ¶ 34. In this scheme, North Korean IT workers have used distinct tactics, techniques, and procedures, and the FBI found those same tactics, techniques, and procedures had been deployed in the U.S. Company 1 heist. *Id.* ¶ 35.

For instance, the Government's investigation identified specific TTK IP addresses that initiated the transfer of stolen virtual currency in the U.S. Company 1 heist. *Id.* According to the Complaint, TTK is known to provide network access to the North Korean Government, and some TTK IP addresses associated with AS 20485 have been observed in illegal activities, including spear phishing attacks. *Id.* When the victims' virtual currency wallets were accessed

without authorization and their currency was stolen, TTK IP addresses associated with AS 20485 were identified as initiating the transfer of the stolen virtual currency from victims' wallets to threat-actor-controlled wallets. *Id.* ¶¶ 35–41.

Furthermore, the Government identified transfers through multiple centralized exchanges designed to obscure the true source of the virtual currency in Defendant Property. According to the Complaint, utilizing the private keys of a compromised trading bot, North Korean IT workers stole SOL from over 400 users and sent it to 32 threat-actor-controlled wallets on the same day the theft was reported. *Id.* ¶¶ 40–41. Based on information from a reliable source and the North Korean government's use of IP addresses supplied by TTK, the FBI concluded North Korean actors were likely responsible. *Id.* ¶ 41. Within two days, the funds were routed to instant exchanges, including FixedFloat. *Id.* ¶ 42. Most funds from the wallets were consolidated at 5ndLnEY through a single intermediary address, where the SOL was converted to USDT and ETH. *Id.* ¶¶ 42–43. The kind of rapid wallet transfers and exchanges used here are a money laundering technique designed to obscure the true source of transactions. *Id.* ¶ 37.

The Government's allegations, which must be taken as true for a motion for default judgment, *see, e.g.*, *R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 30, detail a scheme involving identity theft, computer fraud and abuse, wire fraud, money laundering, and conspiracy to commit the foregoing offenses, and explain how Defendant Property constitutes a product of that scheme. Accordingly, the Government has satisfied its burden under Supplemental Rule G by alleging facts sufficient to establish "a reasonable belief" that it will be able to prove at trial that Defendant Property constitutes property involved in identity theft, computer fraud and abuse, wire fraud, and/or money laundering transactions. *See* Fed. R. Civ. P. Supp. R. G(2)(f); *United States v. Approximately 927,155.442 USDT*, No. 25-CV-3914 (CRC), 2026 WL 2454470, at *3

(D.D.C. Aug. 21, 2026) (finding allegations of fraud scheme and transmission "through a series of intermediary wallets" supported "reasonable belief" that the Government could prove its claim). The Government has therefore sufficiently alleged that Defendant Property is subject to forfeiture under 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), 982(a)(1) and 28 U.S.C. § 2461(c). *United States v. Approximately 2210.8222 of SOL Cryptocurrency*, No. 24-CV-3375 (JMC), 2026 WL 679289, at *5 (D.D.C. Mar. 11, 2026) (granting default judgment and ordering forfeiture where the complaint sufficiently alleged the property's forfeitability, the government satisfied Supplemental Rule G's notice requirements, and no claimant appeared for challenge).

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment and Final Order of Forfeiture (ECF No. 23) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: November 24, 2026

RUDOLPH CONTRERAS
United States District Judge